[No. 22981. Department One. May 14, 1931.]

ROY NICHOLSON, *Respondent*, v. POSTAL TELEGRAPH CABLE COMPANY, *Appellant*.[1]

*John E. Blair*, for appellant.

*McCarthy & Edge, W. E. Dupuis*, and *Leo F. Wilson*, for respondent.

[1] Reported in 299 Pac. 397.

HOLCOMB, J.—This appeal is from the judgment of the trial court in favor of respondent upon the verdict of a jury for the sum of $2,250.

Previous to the filing of an amended complaint by respondent, appellant had moved for a bill of particulars, among other things, specifying the particular nature of the injuries referred to in the original complaint, which motion was granted and a bill of particulars furnished by respondent, in which respondent also requested permission to amend his complaint as to the particulars of the damage therein set forth. Permission being granted, the amended complaint was filed, which sets forth the personal, physical, and mental damages alleged by respondent and also property damage by the total destruction of his automobile because of the accident in question. In the same motion for a bill of particulars, appellant demanded particulars as to

". . . the condition of the plaintiff immediately resulting from the alleged accident, physically and mentally, at the time of and immediately after the alleged accident."

This part of the motion was denied by the trial court.

The amended complaint of respondent alleges that appellant is a Washington corporation engaged in the business of transmitting telegraphic messages and in the erection and maintenance of telegraph lines, and that it had erected a telegraph line along the state highway between Sprague and Ritzville, Washington; and that at a point about four miles west of Sprague, on or before May 30, 1929, it

". . . erected a telegraph pole approximately twenty feet from said state highway and carelessly and negligently extended a guy wire from the top of said pole over to said highway and fastened the end thereof in the ground at a point on the edge of said highway

where vehicles properly travel in the use of said highway.

"That said wire as aforesaid was fastened inside the edge of said highway and was not rendered conspicuous by there being fastened thereto a board or other object which would render it visible to the users of said highway.

"That on the morning of the 30th day of May, 1929, at about the hour of 1:30 a. m., plaintiff was driving his automobile westward along said highway and had turned to the right of the center of said highway for the purpose of permitting some automobiles, occupied by persons unknown to plaintiff and going in the opposite direction, to pass plaintiff and plaintiff, while so turning from the right to enable said automobiles to pass, ran into said naked and invisible wire, causing the automobile of plaintiff to be capsized and take fire, injuring plaintiff and completely destroying said automobile."

The nature, extent, and amounts of property and personal injuries and damages are then set forth. Total damages were alleged and demanded in the sum of $5,650.

The answer of appellant denies the acts of negligence charged, denies that any acts of appellant caused any damage to respondent, as alleged in the amended complaint, and further affirmatively alleges the contributory negligence of respondent. The affirmative matter alleged in the answer is denied by respondent in his reply.

At the conclusion of the testimony on behalf of respondent, appellant moved for a directed verdict in its favor, upon the ground that the testimony showed that respondent was thrown into its guy wire by a blow from a passing automobile, or by reason of the circumstance that the passing automobile had forced him into the guy wire. This motion was denied. At the conclusion of the evidence, appellant again moved

for a non-suit which was denied. After the verdict of the jury had been returned against it, appellant moved for a new trial upon all the statutory grounds, among which was that of newly discovered evidence, in support of which it filed a number of lengthy affidavits. The motion for a new trial was denied.

Appellant requested, and the court submitted to the jury for special findings, two inquiries:

"(1) Was plaintiff's car struck by the second automobile coming toward it and referred to in the testimony?"

This the jury answered "No."

The second interrogatory was not answered because it became immaterial when the first was answered in the negative.

In support of his complaint, respondent showed substantially the following facts: Along one of the principal state highways in eastern Washington, extending from Spokane westward to the coast, appellant had erected and maintained a telegraph line, and, at a point about four miles west of Sprague, it had installed one of its telegraph poles within the fence enclosing the highway and at a point about twelve or fourteen feet from the west edge of the highway. From the top of this pole a guy wire, one-half inch in thickness, extended downwards and was fastened to some rocks buried in the ground inside, but near, the edge of the highway. No board or other object, to render the guy wire conspicuous, was attached to it prior to the accident, as was customarily done by companies maintaining such pole lines in such cases.

Respondent was employed by the state highway department, being one of a crew who were engaged in crushing rock and gravel, whose duties required him to go over the road at night watching the lamps on the gravel piles. At about 1:30 a. m. of May 30, 1929,

while returning to his camp in a small car, and approaching the spot where the guy wire above mentioned was planted in the ground, driving at a speed of about twenty-five miles an hour, as he approached the guy wire two automobiles came toward him, one slightly ahead of the other. He pulled over to his side of the road to give the other cars room to pass, and, while doing so, ran into the naked guy wire at the side of the road.

While there is some dispute in the evidence as to whether or not either of the passing automobiles struck his car, respondent testified positively that no car did, and was corroborated, to some extent, by the evidence of two witnesses, one a highway patrolman, who visited the scene the next morning about eight o'clock, who said the tracks of the car of respondent were straight until the car hit the guy wire, which threw it slightly sideways and it came back into the road and gradually ran off into the ditch; that there was no appearance that the car had been struck by anything before it hit the cable. The other witness, a highway engineer, went to the scene of the accident about 5 o'clock a. m., while the tracks of the car of respondent were still visible, who found that they angled from nearly the center of the road gradually to the right edge of the road and up to the guy wire in a gradual manner. He said the guy wire had a dent in it at a point where it was struck by the automobile; that the guy wire was fastened just inside the dirt shoulder of the road, and that the ground in the vicinity of the guy wire was comparatively smooth with gradual slopes.

There was some further evidence as to the appearance of the left fender and running board of the car, which had not been totally destroyed by the fire which occurred immediately after the collision, which tended

to support the evidence on behalf of respondent. The jury also was taken to and viewed the place where the accident occurred. An engineer testified that boards were customarily put on the guy wires so as to make them more visible.

Upon striking the guy wire, the car of respondent was caused to bounce around, he was thrown out, landed upon the highway some distance from the guy wire, and the car ran forward along the highway a distance of about one hundred fifty feet into a ditch, turned over, caught fire, and was practically completely destroyed. Respondent was rendered unconscious, was taken to a hospital about 2:30 a.m., and did not regain consciousness until about eight or nine o'clock that morning. He suffered quite severe injuries, which were described to the jury and are not necessary to detail here. He lost two months' time, and his salary was $150 per month. His hospital expense was $115, and he was required to spend about $25 for glasses. His automobile, for which he claimed $650 damages, was of that value, or more.

About three years previous to the accident in question, while employed on a railroad at Pasco, respondent was injured by the dropping of a rail by a fellow-servant, by reason of which he was confined in a hospital for six months on account of an injured vertebra. He testified that he had completely recovered from that injury long before the injuries in question were received.

The first contention of appellant is that the testimony shows, beyond a reasonable doubt, that respondent was hit by the car of a third person and thrown into the guy wire, and that the negligence of appellant, if any, was not the proximate cause of the injury.

The evidence being somewhat conflicting upon this question, and the jury having, both by their general and special verdicts, resolved the evidence against appellant upon that question, appellant is concluded thereby. There is positive and substantial evidence to sustain the general and special verdicts of the jury. That being true, we are bound by the verdicts.

The same determination applies to the second contention of appellant that, by the general law of negligence, under the foregoing circumstances, where respondent was thrown into the guy wire by the act of a third person, whether hit and thrown by such third person or merely forced or crowded into the guy wire, the maintenance of the guy wire is not the proximate cause of the accident, and appellant is not legally responsible. What we have said upon the first proposition applies with equal force to the last. None of the cases cited by appellant, beginning with *Teater v. City of Seattle,* 10 Wash. 327, 38 Pac. 1006, including many cases, and concluding with *Ringaard v. Allen Lubricating Co.,* 147 Wash. 653, 267 Pac. 43, can have any possible application to the situation here presented. At all events, as was said in the *Ringaard* case,

"Where the concurrent or successive negligence of two or more persons combined together results in an injury or loss to a third person, and the negligence of the one without the concurring negligence of the other would not have caused the injury or loss, the third person may recover from either or both for the damages suffered."

Compare *Anderson v. McLaren,* 114 Wash. 33, 194 Pac. 828.

In connection with this contention, appellant urges that the court erred in giving and refusing certain instructions requested by it. The refusal of these instructions was excepted to in the following form:

"Defendant excepts to the refusal of the court to give instruction number 'A' requested by the defendant,"

and certain instructions given by the trial court which are urged by appellant as erroneous, but which are not argued as errors, were also excepted to in the same general form. The instructions refused cannot be considered because the exceptions were insufficient. *Davis v. North Coast Transportation Co.*, 160 Wash. 576, 295 Pac. 921.

The third contention of appellant is that, because of the exceptional rule of Washington relating to country roads as distinguished from city streets, it is guilty of no negligence in the placing of its guy wire at the place and in the manner shown by the evidence.

Cases are cited from this court involving the duties and liabilities of cities and towns as greater than the duty and liability of counties for the maintenance of country highways.

The cases cited have no force here, since they establish only the difference as to the liability of municipalities for obstructions in highways. None of them involve the liability of third persons who may obstruct the highway. The general rule is thus stated:

"Telephone, telegraph and electric companies stringing wires in a street or highway are bound to erect and maintain them in a safe condition so that they will not become nuisances or endanger the safety of the traveling public, and are liable for injuries to travelers resulting from the fact that such wires are erected in an improper or unsafe manner, . . ." 13 R. C. L. 407.

And in 29 C. J. 677, as follows:

"A person causing a defect or obstruction in a highway, although outside the traveled way, is liable for injury resulting therefrom; and the fact that the highway was not legally established, or that the municipal-

ity is also liable, or that some other person is under a legal liability to remove the obstruction, is no defense.''

■ The questions of whether the defendant was negligent and whether the defect or obstruction in the highway was the proximate cause of the injury were questions for the jury in this case, and were properly submitted to them. *Gray v. Washington Water Power Co.*, 27 Wash. 713, 68 Pac. 360. Unless reasonable minds could not differ as to what was the proximate cause, this has always been held by us to be a question for the jury.

In *Louisville Home Telephone Co. v. Gasper*, 123 Ky. 128, 93 S. W. 1057, 9 L. R. A. (N. S.) 548, that court held that a telephone company may be held liable in damages to persons injured through the obstruction of a highway by its wires; and that the negligent anchoring of a guy wire of a telephone pole in an alley in such a way that the wheel of a wagon catching upon and running up it overturns the wagon upon a bystander may be found to be the proximate cause of the injury, although such accident would not have occurred but for the negligence of the driver of the wagon, which the telephone company did not anticipate, the injury being the natural, although not the necessary, result of the obstruction.

We approve and adopt the general principles stated in R. C. L., C. J. and the *Louisville Home Telephone Co.* case, *supra*.

■ Lastly, appellant insists that its motion for a new trial, particularly upon the ground of newly discovered evidence, as disclosed by the many affidavits filed, should have been granted. The gist of this contention is that a previous injury at Pasco in 1926, wherein respondent was badly injured, did not come to the knowledge of appellant until during the trial of the case; and that it was impossible during the trial to

discover adequate or complete information respecting the circumstances of that accident, the nature and permanency of the injuries, and the relation of such injuries to the physical and mental condition of which respondent complained upon the last accident. No case is cited by appellant in support of this contention.

Respondent fully and frankly testified as to the former accident and the injuries resulting therefrom, giving the dates, places and names of physicians who treated him. No motion for continuance was made by appellant or time asked in which to investigate.

Respecting this matter the trial court well said:

"There is nothing to dispute plaintiff's evidence that he did sustain serious injuries in the last accident. . . . It is elementary that the infirm, the weak and decrepit are equally entitled to compensation for physical injuries . . . with the robust and the strong."

Appellant criticizes the last sentence of the above quotation as being merely a loose platitude.

We do not agree that it is subject to this criticism. We consider it elementary that the infirm, the weak and the decrepit are equally entitled to compensation for physical injury with the strong and robust, when such injuries are the result of the negligence of some other, and the injuries are satisfactorily shown.

We find no error and the judgment is affirmed.

TOLMAN, C. J., MITCHELL, MAIN, and PARKER, JJ., concur.